
FILED
2011 Mar-17  PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **B.J. DUNN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:10-cv-02220-AKK** |
| **BLUE CROSS BLUE SHIELD** | ) | |
| **OF ALABAMA and AMERICAN** | ) | |
| **BEHAVIORAL BENEFITS** | ) | |
| **MANAGERS, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Defendants Blue Cross Blue Shield of Alabama ("BCBSA") and American

Behavioral Benefits Managers Inc. ("ABBM") removed this action from the

Circuit Court of Jefferson County on August 16, 2010 and quickly filed motions to

dismiss.  Docs. 2, 7.  Although Plaintiff never filed a motion to remand, he

questioned this court's jurisdiction nonetheless in his opposition to Defendants'

motions.  For the reasons stated more fully below, the court concludes that it lacks

subject matter jurisdiction and **REMANDS** this action to the Circuit Court of

Jefferson County, Alabama.

## I.  STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction, with the power to hear only cases authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*  Federal courts are "obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking." *Charon-Bolero v. U.S. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005); *Allapattah Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 753 (11th Cir. 2004).  "[F]ederal courts are directed to construe removal statutes strictly. . . . [A]ll doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).  In removal actions, the removing party bears the burden of establishing jurisdiction. *Diaz v. Shepard*, 85 F.3d 1502, 1505 (11th Cir. 1996).

## II.  FACTUAL BACKGROUND

Plaintiff is a licensed clinical social worker who diagnoses and treats psychiatric, behavioral, and substance-abuse disorders.  Doc. 1-1 at ¶ 4.  Some of Plaintiff's patients have insurance coverage provided by BCBSA, including, apparently, BCBSA's plan for federal employees. *Id.*  Before treating BCBSA-

insured patients, Plaintiff contacts BCBSA to verify coverage. *Id.* For every patient for whom BCBSA confirms coverage, however, Plaintiff also receives a letter stating, in part, "This authorization is not a guarantee of payment. The availability of benefits is contingent upon the existence of coverage under the plan." *Id.* at ¶ 5.

According to Plaintiff, BCBSA received an anonymous complaint regarding his billing procedures in January or February 2009, prompting BCBSA to demand a list of his patient files. *Id.* at ¶ 7. Plaintiff denied that request on confidentiality grounds, offering to comply instead with a request for documents that allowed for a less intrusive review. *Id.* On March 13, 2009, Plaintiff received a letter from ABBM that also requested medical records relating to specific patients Plaintiff treated between January 1, 2006 and March 5, 2009. *Id.* at ¶ 8. ABBM's letter indicated that it had knowledge of a similar request from BCBSA, which it characterized as being "with respect to patients covered by the Blue Cross Blue Shield Federal Employee Health Benefit and Blue Card Program." *Id.* A follow-up letter from ABBM on March 24, 2009 noted that ABBM's previous letter "was precipitated by concerns brought to our attention by Blue Cross Blue Shield of Alabama." *Id.* at ¶ 9.

Plaintiff refused to provide the medical records to ABBM because the

request allegedly did not comply with the provider agreement ("Provider Agreement") he entered into with ABBM. *Id.* at ¶ 10. On April 8, 2009, ABBM sent Plaintiff a letter, signed by its CEO, terminating Plaintiff's participation in the Provider Agreement. *Id.* at ¶ 11. On May 10, 2009, Plaintiff contacted BCBSA to address his dispute with ABBM and "indicated that he was going to vigorously defend his right to participate in the Federal Employee Program as a provider." *Id.* at ¶ 13. On May 11, 2009, BCBSA informed Plaintiff that, because he was no longer a participating member with ABBM, he no longer remained a preferred provider in the BCBSA network. *Id.* at ¶ 14. Thus, BCBSA would reimburse insured patients of Plaintiff with rates for out-of-network benefits. *Id.* From May 11, 2009 until the filing of the instant complaint, BCBSA did not allow Plaintiff to participate as a preferred provider and refused to pay treatment fees for the thirty-nine patients Plaintiff treated during this period. *Id.* at ¶ 15-16. BCBSA represented each was covered under a BCBSA plan prior to treatment, but refused coverage when Plaintiff sought payment afterwards. *Id.* at ¶ 16.

As a result, Plaintiff sued ABBM and BCBSA in the Circuit Court of Jefferson County, Alabama, alleging claims against ABBM for breach of contract (Count I) and tortious interference with a business relationship (Count V), and against BCBSA for failure to pay for services rendered (Count II), interference

with a business relationship (Count III), and interference with a contractual

relationship (Count IV). Doc. 1-1 at 5. BCBSA filed a timely notice of removal,

(doc. 1), asserting jurisdiction under 28 U.S.C. § 1331 (federal question

jurisdiction) and 28 U.S.C. § 1442(a)(1) (federal officer removal). To demonstrate

federal jurisdiction, BCBSA asserts that Plaintiff's state-law claim for failure to

pay is actually a challenge to its benefit determination under the Federal

Employees Health Benefits Act of 1959, 5 U.S.C. §§ 8901 *et seq.* ("FEHBA"),[1]

and, as such, is completely preempted by federal law.

   After removing pursuant to FEHBA, BCBSA filed a motion to dismiss, to

which Plaintiff responded asserting that this court lacks subject matter jurisdiction.

The parties have fully briefed their respective positions, and this matter is ripe for

adjudication.

### III. ANALYSIS

   Though Plaintiff failed to move for remand, Plaintiff questions the court's

jurisdiction. Doc. 14. Thus, the court must first investigate its jurisdiction *sua*

---

[1]FEHBA establishes a comprehensive program of health insurance for federal employees. *See* 5 U.S.C. §§ 8901 *et seq.* FEHBA authorizes the Office of Personnel Management ("OPM") to contract with private carriers to provide federal employees with a variety of health-care plans. 5 U.S.C. § 8902(a). It "assigns to OPM responsibility for negotiating and regulating [these] health-benefits plans for federal employees." *See Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 683 (2006). The largest plan OPM has contracted is the Blue Cross Blue Shield Service Benefit Plan, which is administered by local Blue Cross companies such as BCBSA. *See id.* at 682.

*sponte.  See Charon-Bolero*, 427 F.3d at 956.  Specifically, the court must ascertain whether BCBSA has carried its burden to demonstrate the existence of federal jurisdiction.  *See Diaz*, 85 F.3d at 1505.  In that regard, BCBSA asserts federal jurisdiction on three grounds: complete preemption of claims relating to FEHBA benefits; the predominance of federal common law to FEHBA cases; and federal-officer removal under U.S.C. § 1442(a)(1).[2]  As shown below, none of these grounds support federal jurisdiction.

### A.  Federal Preemption Under FEHBA

First, BCBSA asserts that the civil enforcement provision of FEHBA, as well as the predominance of federal common law, support federal jurisdiction. Essentially, BCBSA asserts that jurisdiction is proper because Plaintiff sues for payments based, in part, upon federal employees' insurance plans.  Plaintiff's claims present a novel issue in this Circuit: Does FEHBA's preemption clause provide complete preemption over claims brought by a provider who has no contract with the FEHBA-carrier nor the assignment of FEHBA-contract rights from his patients.

---

[2]Notably, ABBM does not assert grounds for federal jurisdiction over the claims against it, and therefore the court's jurisdiction, if any, over those claims arises only through supplemental jurisdiction. 15 U.S.C. § 1367(a).  Thus, the court focuses its analysis only on BCBSA's arguments.

*(i)      Complete or Super Preemption*

To contextualize BCBSA's jurisdictional arguments, a brief background discussion of federal preemption and the FEHBA statutory layout is necessary. Ordinarily, federal question jurisdiction is governed by the "well-pleaded complaint" rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 n.7 (1987). Thus, in most circumstances, "the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004). Federal jurisdiction is only proper upon removal if the removing party can establish that (1) a federal claim is asserted on the face of the complaint; (2) the plaintiff wrongly characterized federal claims as state claims under the "artful pleading" doctrine; or (3) the state law claims require interpretation of federal law. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 470-71 (1998). Thus, ordinarily, the existence of a federal defense does not create federal question jurisdiction. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

However, the doctrine of complete preemption or super preemption effectively qualifies the ordinary well-pleaded complaint rule. *Id.* "Where Congress preempts an area of law so completely that any complaint raising claims in that area is necessarily federal in character, super preemption applies, and

federal jurisdiction exists, even if the face of the complaint does not plead federal claims." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998) (citation omitted).  Such preemption "converts state law claims into federal claims for purposes of the well-pleaded complaint rule, allowing a defendant to remove the case to federal court." *Id.*  Thus, the Eleventh Circuit has found that the "jurisdictional issue in cases such as the one at hand is dependent upon whether the plaintiff is seeking relief that is available" under the federal statute in question. *Id.* at 1329-30.  However, "if the plaintiff is not seeking relief that is available under [the statute], no federal question jurisdiction exists." *Id.* at 1330.  In identifying whether a statute has complete preemptive effects, the Supreme Court instructed that such preemption has only been found where "the federal statutes at issue provided the *exclusive cause of action* for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank,* 539 U.S. at 8 (emphasis added).  Thus, the court must determine whether FEHBA contains the requisite detail and remedial exclusivity so as to require complete preemption.

     (ii)    *FEHBA's Civil Enforcement Provision and Preemption Clause*

       FEHBA's civil enforcement provisions address an insured individual's means to challenge a carrier's denial of benefits under a FEHBA plan.  As one

district court explained:

> FEHBA further authorizes OPM to promulgate regulations governing the provision of health benefits. 5 U.S.C. § 8913(a). Pursuant to this authority, OPM has prescribed a mandatory administrative procedure for reviewing denied benefit claims. First, where a benefits provider denies a claim, an enrollee must seek reconsideration from the carrier. If the carrier upholds the denial, then the enrollee must appeal to OPM. The enrollee may seek judicial review of OPM's final disposition of the denial, but the enrollee must bring an action against OPM and not against the carrier. In such a lawsuit, the court's action is limited to directing OPM to require the carrier to pay the amount of benefits in dispute. Through this regulatory scheme, including the right to bring a claim against OPM, FEHBA has provided Plan enrollees with a mechanism for the civil enforcement of the Plan.

*Rievley ex rel Rievley v. Blue Cross Blue Shield of Tenn.*, 69 F. Supp. 2d 1028, 1035 (E.D. Tenn. 1999) (internal citation and quotation marks omitted). Thus, importantly, an enrollee's *only* recourse when challenging a carrier's denial of benefits is first through administrative procedures and then through judicial action against OPM *only*. *See* 5 C.F.R. § 890.107(c) (emphasis added).

FEHBA also dictates that the terms of OPM contracts shall preempt state laws that relate to federal health insurance plans. *See* § 8902(m)(1). In its original form, § 8902(m)(1) led to inconsistent decisions regarding the preemptive effect of FEHBA's provisions on state law claims. *See Carter v. Blue Cross & Blue Shield of Fla., Inc.*, 61 F. Supp. 2d 1237, 1240 n.1 (N.D. Fla. 1999) ("Because the old law appeared to preempt state law only if state law was determined to be inconsistent

with FEHBA's contractual provisions, some courts concluded that FEHBA did not completely preempt state law for jurisdictional purposes.") (collecting cases).  In part to address that uncertainty, Congress enacted the Federal Employees Health Care Protection Act of 1998 (the "1998 Act"), thereby broadening FEHBA's preemption clause by removing the phrase courts interpreted to limit FEHBA's preemptive effect.  *See* Pub L. No. 105-266, 112 Stat. 2363 (1998); *Carter*, 61 F. Supp. 2d at 1240 ("[T]he 1998 Act removed the phrase from the preemption provision of FEHBA that had troubled some courts in determining whether there was complete preemption under FEHBA . . . [and] broadened FEHBA's preemption provision.").  The preemption clause, § 8902(m)(1), now reads: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."  § 8902(m)(1).

   (iii)    *FEHBA Does Not Preempt All State Law Claims*

   Even after the 1998 Act, courts differed on the scope of FEHBA preemption.  Recently, however, the Supreme Court provided a narrowing interpretation, stating that "if Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal

jurisdiction thereby, it may be expected to make that atypical intention clear. . . .
Congress has not done so here." *Empire HealthChoice*, 547 U.S. at 698 (internal
citation omitted).  The Court continued, "8902(m)(1)'s text does not purport to
render inoperative *any and all* state laws that in some way bear on federal
employee-benefit plans." *Id.* (emphasis in original).  "In sum, the presentations
before us fail to establish that § 8902(m)(1)leaves no room for any state law
potentially bearing on federal employee-benefit plans in general, or carrier-
reimbursement claims in particular.  Accordingly, we extract from § 8902(m)(1)
no prescription for federal-court jurisdiction." *Id.* at 699.

      The Supreme Court did not, however, indicate precisely what degree of
federal jurisdiction § 8902(m)(1) supports; instead, it made clear that, at the very
least, the preemption clause is not so broad as to confer federal jurisdiction over a
state law reimbursement claim for the sum of the benefits paid by the carrier on
behalf of a federally insured patient.  *See id.*  In other words, the Court provided,
at best, an outer limit for FEHBA preemption.

      While "less clarity exists with regard to the condition of federal jurisdiction
under FEHBA" than in the ERISA context, courts that have considered whether
"FEHBA provides the exclusive cause of action for lawsuits relating to federal
employees' Service Benefit Plans" noted that the "overwhelming majority [of

courts] have found that Congress' alteration of FEHBA's preemption provision in 1998 achieved complete preemption of all complaints that seek relief within the scope of FEHBA civil enforcement provisions." *See Ala. Dental Ass'n v. Blue Cross & Blue Shield of Ala., Inc.* (*Alabama Dental I*), No. 205-CV-1230-MEF, 2007 WL 25488, at *5-6 (M.D. Ala. Jan. 3, 2007). Despite the 1998 Act's broadening effect, "FEHBA completely preempts *only* those causes of action that fall within the scope of the act's civil enforcement provision." *Id.* at *6 (emphasis added). "Thus, the preemptive scope extends to any action that touches directly upon a benefit determination, including those brought by providers who base their claims on the right of their patients," but "federal jurisdiction cannot be maintained where the plaintiff's complaint seeks relief under state law and is based on an independent legal duty of the health care plan." *Id.*

The crux of FEHBA federal preemption is that federal law completely preempts a plaintiff's claims that challenge a benefit determination if the claims are brought by an enrollee or with an enrollee's written authorization. Thus, federal preemption will apply if the claims "fall within the civil enforcement provisions" of FEHBA. *Rievley*, 69 F. Supp. 2d at 1035.

(iv)    *Plaintiff's Claim for Failure to Pay Does Not Support Federal Jurisdiction*

BCBSA argues that FEHBA's remedial scheme completely preempts Plaintiff's failure to pay claim. *See* doc. 1 at ¶ 8. However, before reaching such a determination, the court must "ascertain whether [Plaintiff's] claims fall within the civil enforcement provisions of the federal law." *Rievley*, 69 F. Supp. 2d at 1035; *see also Whitt*, 147 F.3d at 1329-30 (noting that complete preemption applies only if the plaintiff is seeking relief available under the statute).

A plaintiff's claim falls within FEHBA's civil enforcement provision where the plaintiff has standing to sue under FEHBA and asserts claims that challenge or relate to a benefit determination. *See Alabama Dental I*, 2007 WL 25488 at *6. Where a plaintiff is an enrollee and asserts claims against his carrier, courts broadly construe FEHBA's preemption clause to allow for federal jurisdiction and federal preemption. *See, e.g.*, *Maple v. U.S. ex rel. Office of Personnel Mgmt.*, No. CIV-09-1405-C, 2010 WL 2640121, at *8-9 (W.D. Okl. June 30, 2010) (finding federal preemption of claims against defendant carrier that were based on denial of FEHBA-insured plaintiff's benefit claims and concluding plaintiff only could bring action against OPM); *LPMG, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 03-cv-61668-JEM, slip op. at *9 (S.D. Fla. Dec. 3, 2003) (here, Doc. 18-1) (denying motion to remand and finding super preemption of plaintiff's denial of

benefits claim where plaintiff's complaint indicates that it proceeds based on assignments of benefits from FEHBA-insured patients); *but see Ramirez v. Humana, Inc.*, 119 F. Supp. 2d 1307, 1313 (M.D. Fla. 2000) (declining to find federal jurisdiction over FEHBA insured plaintiff's denial of benefits claim, instead finding ordinary preemption but not complete preemption in 8902(m)(1) because "if Congress desires to confer federal removal jurisdiction over FEHBA cases, it must clearly demonstrate its intent to do so").

But to determine whether Plaintiff can bring his failure to pay claim under FEHBA, the court must first identify whether the class of individuals to whom FEHBA's civil enforcement remedy applies includes Plaintiff.  Importantly, "FEHBA's implementing regulations make clear that OPM has created a remedial mechanism solely for the claims of '**covered individuals**,' not for the claims of providers."  *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 976 (9th Cir. 2007) (citing references in OPM regulations only to the "covered individual") (emphasis added).  However, FEHBA's regulations also make clear that "other individuals or entities" not party to the FEHBA contract may still pursue a claim *if* they are "acting on behalf of a covered individual and . . . have the covered individual's specific written consent to pursue payment of the disputed claim."  5 C.F.R. § 809.105(a)(2); *see also Cedars-Sinai*, 497 F.3d at

976.  The regulations make such a written assignment of benefits by a covered

individual mandatory for any third-party's FEHBA benefits challenge.  Thus, as

BCBSA notes in its Notice of Removal, FEHBA's remedial provisions are "open

to 'medical providers' acting with the written consent of the enrollee."  *See* doc. 1

at 3-4; *see also* 5 C.F.R. § 890.105(a)(2) ("This section applies to covered

individuals and to other individuals or entities who are acting on the behalf of a

covered individual and who have the covered individual's *specific written consent*

*to pursue payment of the disputed claim*.") (emphasis added).

　　Here, though BCBSA acknowledges the need for written consent, neither

Plaintiff nor BCBSA asserts that such written consent exists.  This omission is

critical because without it FEHBA does not apply.  Indeed, Plaintiff notes, albeit

opaquely, that OPM informed him that he could not invoke FEHBA's enforcement

mechanism and that he could not submit a claim to OPM.  Doc. 15 at 5.  Although

it is not dispositive, OPM's representation provides the court further indication

that Plaintiff does not, in fact, have the necessary written assignment, and

therefore standing, to proceed under FEHBA.

　　In support of preemption, BCBSA cites several cases where courts have

found complete preemption of claims by medical providers who sue a carrier, such

as Blue Cross, to recover benefits allegedly owed to the provider's patients.  *See*

doc. 18 at 5 (collecting cases).  However, BCBSA fails to note that the vast

majority of these cases are distinguishable because the plaintiff was either an

enrollee in a FEHBA plan or had secured a written assignment of benefits from a

covered individual.  *See, e.g.*, *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*,

314 F.3d 290, 392 (9th Cir. 2002) (plaintiff sued under his FEHBA-covered health

plan); *Alabama Dental I*, 2007 WL 25488 at *6 (noting FEHBA preemption

appropriate over only claims represented by plaintiff who "sought payment from

BCBS pursuant to an assignment from a patient enrolled in a Service Benefit

Plan"); *Viciana v. Blue Cross and Blue Shield of Fla., Inc.*, No. 02-23349, slip op.

at 3 (S.D. Fla. Dec. 19, 2002) (here, doc. 3-1) (where plaintiff, "a healthcare

provider suing for benefits. . . . through filings with the Court, *has indicated* that

[the plan participant] *has assigned her rights* to the [p]laintiff") (emphasis added);

*Carter v. Blue Cross & Blue Shield of Fla., Inc.*, 61 F. supp. 2d 1237, 1239 (N.D.

Fla. 1999) ("Plaintiff, a federal employee, is enrolled in a federal health insurance

plan pursuant to the Federal Employees Health Benefits Act."); *Kight v. Kaiser*

*Found. Health Plan of Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 336-37 (E.D. Va.

1999) (where plaintiff sued based on her treatment under her FEHBA insured

plan); *Rievley*, 69 F. Supp. 2d at 1030 (noting that the plaintiffs "are enrollees in a

federal health insurance plan underwritten by BCBS-TN and they are subject to

regulations promulgated by OPM"); *Lieberman v. Nat'l Postal Mail Handlers Union*, 819 F. Supp. 344, 348 (S.D.N.Y. 1993) (noting that while plaintiff was assignee for majority of claims, defendant rejected certain claims where another third-party, "not plaintiff, was the assignee identified on the claim . . . [and] issued a benefit check to the enrollee on th one claim for which benefits had not been assigned").  As such, these cases are not persuasive.

Here, Plaintiff's failure to obtain a written assignment alters this case dramatically from the cases cited by BCBSA.  *Cf. Carter*, 61 F. Supp. 2d at 1244-45 (finding federal jurisdiction over plaintiff-insured's claims of fraudulent inducement that plaintiff asserted was not based on FEHBA contract where plaintiff's other claims were based on plaintiff's FEHBA plan with defendant Blue Cross).  Unfortunately, the available case law does not necessarily illuminate the resolution, since few courts have addressed whether FEHBA preemption applies to third-parties who do not proceed as covered individuals or assignees.

In *St. Mary's Hospital v. CareFirst of Maryland, Inc.*, 192 F. Supp. 2d 384 (D. Md. 2002), Judge William N. Nickerson encountered a similar issue when investigating the court's federal jurisdiction on removal, noting "[t]he fact that Plaintiff is neither an enrollee nor an assignee of an enrollee's right does present an apparently novel situation." *Id.* at 389.  Judge Nickerson concluded that the

nature of the plaintiff's claims necessarily called into question the meaning of terms and provisions in the FEHBA contract, so even though the plaintiff was not an enrollee or assignee to a FEHBA plan, the plaintiff and the defendant had entered into a contract that specifically referenced reimbursement pursuant to the patients contract terms, including FEHBA. *Id.* Thus, "notwithstanding Plaintiff's unique position as a provider with no assignment of rights," the court determined that the plaintiff's claims were preempted by federal law because his contract with the carrier required the court to determine whether the benefits were "medically necessary" under FEHBA. *Id.* at 390. Judge Nickerson did not assess what, if any, effect the absence of assignment of benefits had because he determined that the plaintiff's contract with the defendant effectively incorporated FEHBA terms itself. *See id.*

More recently, in *Cedars-Sinai Medical Center*, the Ninth Circuit addressed a provider's claim that the carrier had represented that certain patients were covered and then failed to pay claims for their treatment. *See* 497 F.3d at 974. Because the court found diversity jurisdiction existed, it focused its analysis only on whether FEHBA preempted the state law claims. *Id.* at 981 n.5. The plaintiff's breach of contract and  negligent misrepresentation claims asserted that the defendant owed payment for the services the plaintiff rendered to FEHBA-insured

patients at the rate at which the defendant contracted under the federal plan. *Id.* at

974.  The panel found that the plaintiff-provider's claims were not preempted by

FEHBA because the plaintiff was not a covered person under FEHBA and lacked

written consent or assignment from the FEHBA-insured patients. *Id.* at 975-77.

After reviewing ERISA case law relevant to the FEHBA derivative standing

analysis, the Ninth Circuit concluded that "[b]ecause [the plaintiff] is not a

covered person or an assignee, it has no role in the administrative exhaustion

process and, consequently, the process can provide no relief" to the plaintiff. *Id.*

at 981.  Thus, the Ninth Circuit concluded that, because the plaintiff sued based on

the oral promise to pay and not derivatively on behalf of its patients, the plaintiff's

claims were not preempted by FEHBA's civil enforcement provision. *Id.* at 977

("Because Cedars-Sinai's claims arise from PBP Health's contractual obligation to

Cedars-Sinai – an obligation that arose when PBP Health represented that [the

FEHBA-insured patient] was covered by the Plan – Cedars-Sinai's claims do not

'relate to' 'benefits' to [the patient].").

Likewise, in *Alabama Dental I*, Judge Mark E. Fuller of the Middle District

of Alabama drew a distinction between plaintiffs whose claims are based on

assignments from their patients and those whose claims are based on some other

state-law based duty. *See id.*, 2007 WL 25488 at *6.  After concluding that

"FEHBA completely preeempts only those causes of action that fall within the scope of the act's civil enforcement provision," Judge Fuller looked to the two representative plaintiffs' respective claims to determine whether one or both filed claims that they should have pursued under FEHBA's administrative scheme. *Id.* Judge Fuller concluded that because one of the representative plaintiffs "sought payment from BCBS pursuant to an assignment from a patient enrolled in a Service Benefit Plan," the "Court cannot permit [that plaintiff], or his patients for that matter, to circumvent the administrative mechanism that OPM has erected to review claims of *aggrieved enrollees*." *Id.* (emphasis added).  "On the other hand, federal jurisdiction cannot be maintained where the plaintiff's complaint seeks relief under state law and is based on an independent legal duty of the health care plan." *Id.*  Thus, because the second representative plaintiff disputed the defendant's performance of a separate, non-FEHBA contract, his claims were not pursuant to FEHBA's administrative mechanism and, therefore, did not require federal preemption or support federal jurisdiction. *Id.*

Recently, in *Transitional Hospitals Corp. of Louisiana, Inc. v. American Postal Workers Union Health Plan* (*Transitional Hospitals II*), No. 09-6245, 2010 WL 187388 (E.D. La. Jan. 13, 2010), the plaintiff sued the carrier for negligent misrepresentation, breach of contract, and detrimental reliance, for initially

indicating that a particular patient was covered, then denying payment for services rendered to that FEHBA-insured patient. *Id.* at *1. The plaintiff there, as here, was not an assignee of the patient's rights. *Id.* Judge Lance M. Africk of the Eastern District of Louisiana held that because the plaintiff "is not suing to enforce [the patient's] rights under her FEHBA plan," the provider's "claims do not touch upon a benefit determination," and the plaintiff therefore "seeks relief under state law based on a legal duty that is independent from the health care plan." *Id.* at *4. Moreover, Judge Africk concluded that because the plaintiff was not "suing to enforce [the patient's] right under FEHBA," then the plaintiff was not "required to sue as an assignee" to bring non-FEHBA state law claims, and, consequently, "the Court f[ound] that it lack[ed] subject matter jurisdiction." *Id.* at *5.

Likewise, the Eleventh Circuit's ERISA case law regarding derivative standing stresses the importance of written assignments to support federal jurisdiction over provider's derivative claims.[3] For example, in *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236 (11th Cir. 2001), the Eleventh Circuit clearly explained that courts cannot assume the derivative standing of a

---

[3] Courts have turned to ERISA to help interpret similarly-worded or constructed provisions of FEHBA. *See, e.g.*, *Blue Cross & Blue Shield of Fla. v. Dep't of Banking and Fin.*, 791 F.2d 1501, 1504 (11th Cir.1986) (looking to Supreme Court precedent in the ERISA context to help determine FEHBA's preemption clause in § 8902(m)). Though the preemption analyses for ERISA and FEHBA are distinct, the justification for derivative standing is essentially identical.

medical provider to sue on behalf of a plan beneficiary.  *See id.* at 1242 (rejecting Blue Cross's federal jurisdiction arguments because the defendant admittedly did not know whether the plaintiffs received an assignment from an ERISA participant and failed to present proof of such an assignment).  "Without proof of an assignment, the derivative standing doctrine does not apply."  *Id.*; *see Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) (recognizing for the first time a medical provider's derivative standing to sue on behalf of a plan participant or beneficiary if the provider obtains a written assignment).[4]  The regulations and the Eleventh Circuit's ERISA case law indicate that a plaintiff who does not rely upon an assignment of benefits is without the derivative standing to seek relief under the umbrella of FEHBA's civil enforcement provision.

_____

[4]*See also Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010) (finding that an assignment of benefits includes a claim form by the provider demonstrating authorization to receive payment on behalf of the patients, but noting that such written assignments must be submitted to support the derivative standing of a medical provider suing under ERISA); *Adventist Health Sys./Sunbelt Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 6:08-cv-1706-Orl-22KRS, 2009 WL722303, at *8 (M.D. Fla. Mar. 18, 2009) (adopting the magistrate judge's determination that defendant's argument that the plaintiff had standing based on an assignment of benefits failed to demonstrate standing to sue derivatively where plaintiff never admitted it had valid assignments nor relied on assignment as the basis for any of its claims); *Pearson's Pharmacy, Inc. v. Blue Cross & Blue Shield of Ala.*, No. 3:05-cv-1072-WKW, 2007 WL 3496031, at *3-4 (M.D. Ala. Nov. 14, 2007) (remanding the case for lack of federal jurisdiction where the plaintiffs lacked standing to sue under ERISA because the defendant could not show that the plaintiffs obtained written assignments of benefits).  In fact, in *Pearson's Pharmacy*, Judge W. Keith Watkins questioned whether the removal of an ERISA action without evidence of written assignment of benefits might amount to bad faith.  *Pearson's Pharmacy*, 2007 WL 3496031 at *3 ("Because of the precedent requiring a written assignment of benefits for a healthcare provider to have standing under ERISA, the court questions whether Blue Cross removed the case and argued against remand in good faith.").

As BCBSA notes, Plaintiff bases his failure to pay claim on the fact that "said amount is due and owing in that all of said patients are covered under a plan that provides payments for services rendered." Doc. 1-1 at ¶ 21. Moreover, as BCBSA argues, it appears that Plaintiff means to somehow support his claim with the fact that his patients were allegedly covered under a plan. However, "[a]s the party seeking removal, Blue Cross ha[s] the burden of producing facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence." *Hobbs*, 276 F.3d at 1242 (citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998)). It is not enough that Plaintiff seeks payment for services rendered to at least some FEHBA insured patients. The crucial issue is the source of BCBSA's obligation to pay that Plaintiff alleges it breached. And BCBSA carries the burden of showing that Plaintiff has the necessary written consent from covered individuals. *See id.* If Plaintiff believed that the patients in question were covered because of BCBSA's representation before treatment and relied on that representation therafter, then Plaintiff's claim resembles a detrimental reliance claim, a claim other courts have rejected as a basis for federal jurisdiction under FEHBA preemption. *See, e.g.*, *Cedars-Sinai*, 497 F.3d at 977 (rejecting federal preemption of detrimental reliance and unjust enrichment claims); *Transitional Hospitals II*, 2010 WL 187388 at *5 (granting plaintiff's

motion to remand for lack of jurisdiction where plaintiff was "not suing to enforce [patient's] right under FEHBA; rather [plaintiff] is suing on the  alleged misrepresentations made by [the carrier's] representative to [plaintiff]").  Even in the ERISA context, in which courts recognize broader federal preemption than under FEHBA, "detrimental reliance claims brought by third party providers in that capacity are not subject to complete preemption."  *Transitional Hospitals II*, 2010 WL 187388 at *3 (citing *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 246 (5th Cir. 1990)).

     In short, neither Defendants nor Plaintiff asserts that Plaintiff secured the written consent of his FEHBA-enrolled patients.  In fact, BCBSA assumes without explanation that Plaintiff sues as an assignee of his patients' claims.  However, because of the court's obligation to construe removal narrowly, *see Univ. of S. Ala.*, 168 F.3d at 411, and the fact that the attendant burden of proof belongs to BCBSA, *see Diaz*, 85 F.3d at 1505, the court cannot make a similar assumption.  Moreover, Plaintiff at no point asserts that he sues BCBSA derivatively.  Given the lack of argument to the contrary and the failure of Plaintiff or BCBSA to provide the court with evidence of an assignment from a covered individual, the court concludes that Plaintiff's claims cannot proceed under FEHBA because Plaintiff does not fall under FEHBA's civil enforcement remedy.  Because

Plaintiff does not fall under FEHBA's civil enforcement mechanism, FEHBA's preemption clause likewise does not preempt Plaintiff's state law claims.  *See Alabama Dental I*, 2007 WL 25488 at * 6.  Accordingly, BCBSA fails to demonstrate federal jurisdiction based on the complete preemption of Plaintiff's failure to pay claim.[5]

To the extent that BCBSA asserts federal preemption over the tortious interference claims, the court notes that those claims are not based on the FEHBA civil enforcement provision and, therefore, are not preempted and do not support federal jurisdiction for the same reasons stated more fully above.[6]

## B.  Predominance of Federal Law

---

[5] Though this court declines to follow the *St. Mary's Hospital* court in finding jurisdiction and federal preemption where a provider lacks an assignment of benefits from a covered individual, the court echoes the following sentiments expressed by that court:

> [T]he Court acknowledges that Plaintiff is likely left without a remedy for its claims involving the [FEHBA Plan] enrollees, because the hospital did not obtain an assignment of rights to pursue OPM review on the enrollees' behalf.  This fact does not compel the Court to allow Plaintiff to proceed with its state law claims, however.  To do so would create a perverse incentive for health care providers to forego assignments of rights in order to skirt OPM review and seek possibly more lucrative state remedies.

*St. Mary's Hosp.*, 192 F. Supp. 2d at 390.  Accordingly, the court's denial of federal jurisdiction is not an indication that the court necessarily believes Plaintiff has a remedy for his failure to pay claim in state court.

[6] The court notes, for example, that a tortious interference claim might support federal jurisdiction if brought by a *covered individual* or *assignee* who complained of the method that the carrier and OPM handled a benefit claim and investigation of billing practices.  *See, e.g., Fed. Plaza Med. Assocs. v. Palermo*, No. 87 Civ. 6777 (MGC), 1991 WL 29201, at *7-8 (S.D.N.Y. Feb. 22, 1991).  Those facts are not presently before the court.

Alternatively, BCBSA argues that, even if FEHBA's administrative remedies and civil enforcement do not completely preempt Plaintiff's claims, the claims necessarily raise federal questions because cases regarding "FEHBA-plan benefits are governed exclusively by federal common law." *See* doc. 1 at 6. Again, the court is unable to conclude that Plaintiff's complaint proceeds pursuant to FEHBA's civil enforcement provision. While a resolution of this case may well touch on certain areas of federal law, Plaintiff's claims, to the extent they are sufficiently pleaded, are all state-law tort claims that will be resolved based on an application of Alabama case law. *See generally Empire HealthChoice*, 547 U.S. 677 (noting that the fact that a claim might involve a FEHBA reimbursement claim does not make federal law a sufficient element to support "arising under" jurisdiction). None of Plaintiff's claims necessarily implicate the terms of a FEHBA plan. *Cf. St. Mary's Hosp.*, 192 F. Supp. 2d at 390. Therefore, the court does not have subject matter jurisdiction based on any asserted predominance of federal law in this case.

## C.  Federal Officer Removal

Finally, BCBSA asserts federal jurisdiction based on federal officer removal under § 1442(a)(1). Section 1442(a)(1) permits a defendant to remove to federal court a state-court action brought against the "United States or any agency thereof

or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . ." (emphasis added).  BCBSA asserts that all of its actions connected to this case were taken under its contract with OPM and, thus, support federal officer removal.

(i)      *Federal Officer Removal Statute - 28 U.S.C. § 1442(a)(1)*

"The federal statute permits removal only if [the defendant], in carrying out the 'acts' that are the subject of the petitioners' complaint, was 'acting under' any 'agency' or 'officer' of 'the United States.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (citing 28 U.S.C. § 1442(a)(1)).  The Eleventh Circuit has promulgated a two prong test to allow federal officer removal: (1) the defendant must state a colorable defense that arises from its duty to enforce federal law, and (2) the defendant must establish a causal connection between the plaintiff's claims and the actions taken under official authority.  *See Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).  "The words 'acting under' are broad, and [the Supreme Court] has made clear that the statute must be 'liberally construed.'" *Watson*, 551 U.S. at 147 (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).  However, "a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Id.*  Such history and context

demonstrate that the "removal statute's basic purpose is to protect the Federal Government from the interference with its functioning if a State were able to arrest and bring to state court officers and agents of the Federal Government acting within their authority." *See id.* at 150.  Removal is only appropriate for those private persons who assist federal officers in the performance of official duties. *See id.* at 151.  "[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.* at 152. (emphasis in original).  Thus, "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. . . . And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 153.  As such, courts deny removal where the conduct in question lacked a sufficient nexus to the relevant federal officer or agency's directives.  *See, e.g.*, *King v. Provident Bank*, 428 F. Supp. 2d 1226,1231-32 (M.D. Ala. 2006) (rejecting federal officer removal because the defendant's activities were not closely related enough to the detailed and specific federal direction necessary to qualify as "acting under" a federal officer); *Kennedy v. Health Options, Inc.*, 329 F. Supp. 2d 1314, 1318 (S.D. Fla. 2004) (rejecting federal officer removal for lack of causal connection between Medicare carrier's actions and the legislative directives).

"When, as here, a private party is seeking removal under section 1442(a)(1), the party bears a special burden of establishing the official nature of its activities." *See Orthopedic Specialists of N.J. v. Horizon Blue Cross/Blue Shield of N.J.*, 518 F. Supp. 2d 128, 133 (D.N.J. 2007) (internal citations and quotation marks omitted); *see also Freiburg v. Swinerton & Walburg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1150 (D. Colo 2002) ("Because [federal officer removal] is premised on the protection of *federal* activity and an anachronistic mistrust of state courts' ability to protect and enforce *federal* interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities.") (emphasis in original).  Indeed, the Supreme Court recently warned against determinations of federal officer removal that "would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. . . . Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion."  *Watson*, 551 U.S. at 153.

　　(ii)　　*Federal Removal in FEHBA Cases*

　　In assessing the propriety of federal officer removal jurisdiction in the FEHBA context, this court faces a question that is the source of significant disagreement amongst the courts.  *See Orthopedic Specialists*, 518 F. Supp. 2d

at133 (noting "that there is a split of authority on the question of section

1442(a)(1)'s application to a FEHBA provider").[7]  These conflicting opinions

regarding federal officer removal are "largely driven by the nature of the plaintiff's

claim."  *See id.* at 134.  Where a FEHBA-insured plaintiff challenges a

_____

[7]The *Orthopedic Specialists* court noted the then-existing split of authority as follows: *Compare Transitional Hosps. Corp. of La., Inc. v. La. Health Serv. & Indem. Co.*, No. Civ. A. 05-221, 2005 WL 2037533, *3 (E.D. La. Aug. 16, 2005) (rejecting federal officer removal jurisdiction over negligent misrepresentation claim); *Haller v. Kaiser Found. Health Plan of Nw.*, 184 F. Supp. 2d 1040, 1045 (D. Or. 2001) (rejecting federal officer removal jurisdiction over malpractice and negligence claims); *Cyr v. Kaiser Found. Health Plan of Tex.*, 12 F. Supp. 556, 568 (N.D. Tex. 1998) (rejecting, without discussion, federal officer removal jurisdiction over negligence, negligent concealment, tortious interference, and Texas commercial bribery statute claims); *Arnold v. Blue Cross & Blue Shield of Tex.*, Inc., 973 F. Supp. 726, 740-41 (S.D. Tex. 1997) (rejecting federal officer removal jurisdiction over false advertising and Texas insurance law claim), *with Anesthesiology Assocs.*, No. 03-15664, slip op. (11th Cir. 2005) (permitting federal officer removal jurisdiction over assignment of benefit claims); *Ala. Dental Ass'n*, 2007 WL 25488 at *7 (permitting federal officer removal jurisdiction over assignment of benefits claim, but rejecting removal over claim made "solely in connection with [Plaintiff's] contractual arrangements with [Defendant]," but nevertheless permitting supplemental jurisdiction over the latter); *Holton v. Blue Cross & Blue Shield of S.C.*, 56 F. Supp. 2d 1347, 1351 (M.D. Ala. 1999) (upholding jurisdiction over health care provider's claims based on Federal Officer Removal statute). *Orthopedic Specialists*, 518 F. Supp. 2d at 133-34.  That split remains.  *Compare Mitchell v. Blue Cross & Blue Shield of Ala., Inc.*, No.: 2:07-CV-134-RDP, Doc. 28, slip op. at 9 (N.D. Ala. Oct. 24, 2008) (rejecting federal officer removal jurisdiction over non-FEHBA contractual claims of provider who treated federally insured patients despite defendant's claim that it acted pursuant to its OPM contract), *aff'd, Ala. Dental Ass'n v. Blue Cross & Blue Shield of Ala.*, 368 F. App'x 956 (11th Cir. 2010) (unpublished); *Van Horn v. Ark. Blue Cross & Blue Shield*, 629 F. Supp. 2d 905, 914-15 (E.D. Ark. 2007) (rejecting federal officer removal jurisdiction over plaintiff's declaratory judgment claim that defendant has no claim of subrogation or reimbursement for recovery), *with Truell v. Blue Cross & Blue Shield of Fla., Inc.*, No.: 8:08-CV-103-T-24TGW, Doc. 8, slip op. at 5-6 (M.D. Fla. Mar. 31, 2008) (here, doc.1-15 at 6-7) (permitting federal officer removal jurisdiction over FEHBA plan enrollee's claims centered on enrollment and benefit determination).

determination of benefits or disputes a carrier's payment, federal officer removal
may be appropriate. *See, e.g.*, *Truell v. Blue Cross & Blue Shield of Fla., Inc.*,
No.: 8:08-CV-103-T-24TGW, Doc. 8, slip op. at 5-6 (M.D. Fla. Mar. 31, 2008)
(here, doc.1-15 at 6-7) (permitting federal officer removal jurisdiction over
FEHBA plan enrollee's claims centered on enrollment and benefit determination);
*Holton v. Blue Cross & Blue Shield of S.C.*, 56 F. Supp. 2d 1347, 1350-51 (M.D.
Ala. 1999) (granting federal officer removal over healthcare provider's claims for
benefit payments against carrier owed to him under the federal CHAMPUS
program for mental healthcare). Indeed, in framing his analysis of a related
question in *Alabama Dental I*, Judge Fuller likewise noted that "courts have split
on the key determination of whether a health care provider's claims *brought
pursuant to a patient assignment* establish the requisite nexus between the
defendant's act and the federal official's authority," apparently assuming that
removal would occur pursuant to FEHBA's civil enforcement mechanism. *See
Alabama Dental I*, 2007 WL 25488 at *7 (emphasis added). Conversely, courts
have rejected federal officer removal when the plaintiff's claim is not pursued
through an assignment of benefits and where the plaintiff is not seeking a
determination of benefits under a FEHBA plan. *See, e.g.*, *Van Horn v. Ark. Blue
Cross & Blue Shield*, 629 F. Supp. 2d 905914-15 (E.D. Ark.) (relying upon

*Watson* and rejecting federal officer removal in the FEHBA context because the court did not find sufficient "direct and detailed" control by the federal officer and the contract afforded defendant with discretion as to how the carrier should proceed under the contract); *see also supra*, note 7.  Into this morass the court must travel to resolve the jurisdictional questions presented by Plaintiff's complaint.

> (iii)   *Federal Officer Removal Does Not Support Removal of Plaintiff's Claims*

BCBSA asserts that § 1442(a)(1) supports removal of either Plaintiff's failure to pay claim or tortious interference claim because the genesis of the complaint is the denial of claims and BCBSA's subsequent contact with ABBM to investigate reports of Plaintiff's fraudulent billing practices.  As the court has already noted, Plaintiff's claims do not rely upon an assignment of benefits from one of his patients.  Thus, he lacks standing under FEHBA's enforcement mechanism and his claim for failure to pay should not be removed for the same reason it is not preempted: the claim does not invoke or require BCBSA to defend based on any FEHBA provision.  BCBSA makes clear, however, that it believes federal officer removal is proper based on Plaintiff's tortious interference claim as well because its contract with OPM requires it to investigate fraud and that all of Plaintiff's claims result from its mandatory fraud investigation.  *See* doc. 18 at 11.

Thus, the court must assess whether OPM's broad fraud prevention language

supports removal here.

   (a) <u>FEHBA Removal</u>

   Again, courts are split on precisely what circumstances support federal

officer removal by a FEHBA carrier.  BCBSA notes that, at least in the Medicare

context, courts have found fraud investigations can support federal officer

removal.  *See, e.g.*, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 73 (2d

Cir. 1998) ("The investigation and reporting of possible Medicare fraud is

precisely the type of delegated discretionary function that the public interest

requires to be protected by immunity.").[8]  BCBSA also relies heavily on the

unpublished decision in *Anesthesiology Associates of Tallahassee, Florida, P.A. v.*

*Blue Cross Blue Shield of Florida, Inc.*, NO. 03-00011-CV-4-SPM, (11th Cir.

Mar. 18, 2005), to support federal officer removal.  Based upon *Peterson v. Blue*

---

   [8]The court notes, however, that the *Pani* court dealt with very different facts.  First, the
*Pani* court did not consider federal officer removal.  Second, and more importantly, the plaintiff
based his claim on the defendant's report to the Government that led to a criminal investigation
and indictment, *id.* at 70, whereas here Plaintiff asserts BCBSA interfered with a contract he had
with another private party. Third, the *Pani* court relied on 42 CFR 421.5(b) of Medicare's
regulations which provides indemnity to carriers and intermediaries acting on behalf of the
Medicare Administrator. BCBSA has not indicated any comparable FEHBA indemnification that
supports the view that BCBSA's acted solely as an agent of OPM. Additionally, courts disagree
whether Medicare cases are useful precedent because Medicare delegated authority to carriers
and provided far more detailed administration than the FEHBA.  *See Houston Cmty. Hosp.*, 481
F.3d at 273; *Orthopedic Specialists*, 518 F. Supp. 2d at 136, 138 n. 8 ("For the reasons discussed
above, the Court finds Medicare case law inapposite to the FEHBA context.").

*Cross/Blue Shield of Texas*, 508 F.2d 55, 56-58 (5th Cir. 1975), a case that found

federal officer immunity applied to a healthcare provider,[9] in *Anesthesiology*

*Associates*, the Eleventh Circuit affirmed a district court's finding of federal

jurisdiction based on federal officer removal.  *Id.* at * 5 (holding that "§ 1442(a)(1)

clearly provides jurisdiction over the claims against the FEHBA-covered plans").

As one court aptly summarized the holding:

> The crux of the *Anesthesiology Associates* decision is that the
> federal officer removal statute permits a health plan insurer providing
> benefits under a federal program to remove a case where the provider is
> suing the insurer to compel some action that would be contrary to the
> terms of the federal plan, *e.g.*, an attempt to force the plan to reimburse
> the provider rather than the participant.

*Transitional Hospitals I*, 2005 WL 2037553 at *3.

However, shortly after the *Anesthesiology Associates* case, the Fifth Circuit

analyzed official immunity of federal officers in the FEHBA context, and hinted

that the Eleventh Circuit construed the *Peterson* holding too broadly.  *See Houston*

*Cmty. Hosp. v. Blue Cross & Blue Shield of Tex.*, 481 F.3d 265, 273 (5th Cir.

2007).  The Fifth Circuit concluded that the *Anesthesiology Associates*

"unpublished Eleventh Circuit opinion falls well short of demanding that we

extend official immunity to every FEHBA insurer contracting with the

---

[9]In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh
Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior
to October 1, 1981.

government." *Id.*; *see also Orthopedic Specialists*, 518 F. Supp. 2d at 136 (noting the Fifth Circuit's distinction in *Houston Community Hospital* between the FEHBA context and the *Peterson* Medicare context supports the conclusion that federal control is more detailed and direct in Medicare and rejecting federal removal in FEHBA cases). Moreover, the Fifth Circuit questioned the reliance on *Peterson*, a Medicare case, in analyzing claims involving a FEHBA plan, a far less detailed legislation that does not involve the same indemnities or delegation of authority found in the Medicare context. *See Houston Cmty. Hosp.*, 481 F.3d at 272-73 ("BCBST's reliance upon the Medicare lines of cases is also misplaced. . . . No analogous delegation of authority exists here."); *see also Orthopedic Specialists*, 518 F. Supp. 2d at 136, 138 n.8 ("For the reasons discussed above, the Court finds Medicare case law inapposite to the FEHBA context.").

In any event, the *Anesthesiology Associates* opinion supports the delineation courts have drawn between cases that challenge a benefit determination that touches on FEHBA's detailed remedial scheme and those cases that do not or cannot state claims that invoke FEHBA's specific civil enforcement mechanism. Thus, a provider who "is an assignee of reimbursement payments" and who challenges the payment of FEHBA benefits cannot prevent a carrier, such as Blue Cross, from removing the case in light of FEHBA's exclusive remedy for FEHBA

benefit challenges and the mandate that only OPM may be sued for such a determination. *Anesthesiology Assocs.*, slip op. at 2, 4-5 (doc. 1-14 at 3-6). However, the Eleventh Circuit's unpublished opinion does not stand for the proposition that a FEHBA carrier may remove any action in which it is sued by a provider who treats patients who happen to be federally insured.

In *Alabama Dental I*, Judge Fuller also considered federal officer removal jurisdiction and concluded, just as he had in the FEHBA preemption context, that federal officer removal did not support federal jurisdiction over claims not brought pursuant to FEHBA's civil enforcement provision. *See Ala. Dental I*, 2007 WL 25488 at *8. Judge Fuller found that federal officer removal was appropriate with respect to the representative plaintiff's claims that sought relief via assignment of benefits. *Id.* at *7. ("OPM has delineated a specific administrative regime to assess the claims of enrollees who seek review of their benefit determination. BCBS contends that it acts in compliance with OPM's directives and argues that the remedial limitations that accompany OPM's benefit review process provide a defense."). However, Judge Fuller concluded that a suit between parties in a pure state-law contract claim "does not touch upon the procedures or regulations dictated by OPM." *Id.* "'Asserting that a defendant's conduct is performed at the general direction of a federal agency does not rise to the level of removal based on

the' Federal Removal Statute." *Id.* (quoting *Kennedy*, 329 F. Supp. 2d at 1318).

Judge Fuller recognized the need to distinguish between federal officer removal

based on claims under FEHBA's detailed civil enforcement mechanism and those

brought pursuant to a distinct state-law based duty or associated with a less-

specific FEHBA regulation.  *Id.* at *7-8.

Recently, in *Mitchell v. Blue Cross & Blue Shield of Alabama, Inc.*, No.

2:07-CV-134-RDP, Doc. 28 (N.D. Ala. Oct. 24, 2008), *aff'd*, *Alabama Dental*

*Ass'n v. Blue Cross & Blue Shield of Alabama* (*Alabama Dental II*), 368 F. App'x

956 (11th Cir. 2010), the Honorable R. David Proctor of this court confronted a

similar question and determined federal officer removal jurisdiction was

improper.[10]  Slip op. at 9.  Judge Proctor framed the issue as whether § 1442(a)(1)

supported removal when the remaining plaintiffs no longer proceeded pursuant to

an assignment of benefits.  *Id.* at *3.  The plaintiff before Judge Proctor proceeded

based upon a separate provider contract with defendant Blue Cross.  *Id.* at *6.  As

it has here, Blue Cross asserted that, because plaintiff/third-party provider treated

---

[10] The *Mitchell* case is the continuation of *Alabama Dental I* that was ultimately
transferred by Judge Fuller from the Middle District of Alabama to the Northern District in 2007,
though it has undergone several mutations.  In the *Mitchell* opinion referenced above, Judge
Proctor revisited the jurisdictional issues *sua sponte* based on amendments to the complaint.
Judge Proctor styled the case with a new name-plaintiff because the Alabama Dental Association
was no longer a party to the case, but, upon appeal, the Eleventh Circuit returned to the case's
original styling, hence the return to the "Alabama Dental Association" caption.

some patients who were insured under its FEHBA plan, it was therefore entitled to remove because its actions were regulated by its contract with OPM. *See id.* at *3-4. Judge Proctor dismissed this argument stating that removal under § 1442(a)(1) of FEHBA claims is supported by the rationale "that where the claims are based upon a patient assignment under a federal benefits program, the insurer's claims decisions are governed by the contract negotiated and interpreted by OPM. The duty to pay for health services is determined by the terms of the plan negotiated by OPM, of which the assigning patient is a member." *Id.* at *6.

In *Mitchell*, Blue Cross argued that because OPM oversees the coding practice and accuracy that provided the basis for the plaintiff's complaint, the complaint necessarily implicated Blue Cross's FEHBA contract with OPM. *See id.* at *7. "The clause, specifically 2002 CS 1039 § 1.9(b)(2)(i)(B), directs that 'Carrier shall develop and apply a quality assurance program . . . [that] shall include procedures to address . . . Coding Accuracy.' This clause further provides a 'required standard' that 98 percent of claims be coded accurately." *Id.* (quoting the parties' OPM contract). Judge Proctor found the clause insufficient for removal, noting that "[t]his is not the type of 'direct and detailed control' by a federal officer required to establish Federal Officer Removal jurisdiction." *Id.* (quoting *Orthopedic Specialists*, 518 F. Supp. 2d at 135). Thus, Judge Proctor

rejected federal officer removal, *id.*, and, in a short, unpublished opinion, the

Eleventh Circuit affirmed. *Alabama Dental II*, 368 F. App'x at 957 ("We have

reviewed the briefs and received the benefit of oral argument. Finding no

reversible error, we affirm the remand.").

In *Orthopedic Specialists*, Judge Faith S. Hochberg of the District Court of

New Jersey also rejected federal officer removal in the FEHBA context. 518 F.

Supp. 2d at 137. Though she analyzed the issue under a test promulgated by the

Third Circuit, Judge Hochberg's analysis is persuasive. Importantly, she

distinguishes the plaintiff's claim from the one the Eleventh Circuit found

removable in *Anesthesiology Associates*. *Id.* She wrote:

> By contrast, Plaintiff's promissory estoppel claim in the instant
> case is unrelated to the provision of benefits under the terms of the plan.
> Rather, Plaintiff's claim arises from Defendant's purportedly erroneous
> pre-authorization of [the patient's] surgery and Plaintiff's subsequent
> reliance on this promise. It is *this* act of purportedly erroneous pre-
> authorization over which a federal agency or officer must have exercised
> "direct and detailed" control if this Court is to exercise jurisdiction over
> Defendant under the federal officer removal statute. Defendant does not
> allege that OPM directed them to erroneously promise to reimburse
> Plaintiff for [the patient's] procedure. This act was taken by Defendant
> and Defendant alone.

*Id.* (citation omitted) (emphasis in original). Thus, Judge Hochberg remanded the

case to state court. *Id.* at 138.

These cases simply demonstrate that the degree of specificity and the

amount of control that the federal remedial scheme provides is an important part of demonstrating a nexus between a defendant's action and the direction of a federal officer.

    (b) <u>Fraud Prevention as Mandated by OPM</u>

       Because BCBSA claims that it initiated its fraud investigation pursuant to FEHBA regulations, the court now turns to those identified FEHBA regulations. To help establish a uniform standard of quality amongst FEHBA carriers, 48 C.F.R. 1609.7001 sets minimum standards for health benefit carriers, including requirements for proper financial record keeping, remaining lawfully engaged in business, and requiring that carriers "perform the contract in accordance with good business practices." Such prudent business practices include compliance with FEHBA contracts and regulation, accurate accounting, and maintaining a system of internal controls that prevent waste, loss, or misappropriation. FEHBA provides OPM with authority to penalize a carrier for "'using fraudulent or unethical business or health care practices or otherwise displaying a lack of business integrity or honesty.'" Doc. 3 at 14 (quoting 48 C.F.R. § 1609.7001(c)-(d)). Thus, to encourage proper internal controls over fraudulent billing and to prevent waste, OPM's contract with BCBSA includes the following paragraph:

> The Carrier shall conduct a program to assess its vulnerability to fraud and abuse and shall operate a system designed to detect and eliminate

fraud and abuse internally by Carrier employees and subcontractors, by providers providing goods or services to FEHB Members, and by individual FEHB Members.  The program must specify provisions in place for cost avoidance not just fraud detection, along with criteria for follow-up actions.  The Carrier must submit to OPM an annual analysis of the costs and benefits of its fraud and abuse program.  The Carrier must also submit annual reports to OPM by March 31 addressing the following: number of cases; dollars identified as lost and recovered; actual and projected savings; cases referred by law enforcement and resolved through negotiated settlement; and number of arrests and criminal convictions.  The report will also include the industry standards checklist.

Doc. 1-3 at 11; Master Contract § 1.9(a).

This court disagrees with BCBSA that this language is a delegation of authority to BCBSA, and finds, instead, that it demonstrates only a mandate for self-regulation and reporting.  A contrary conclusion would allow internal monitoring for proper accounting and other regulation compliance to support removal.  "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'  And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored."  *Watson*, 551 U.S. at 153.  BCBSA would no doubt argue that the court should not view the terms of its contract with OPM in the same light as regulations.  Instead, BCBSA argues that the contract provisions are a directive to BCBSA, as a government contractor, to root out fraud, making BCBSA akin to a

federal officer even to the extent it carries out *internal* fraud detection.

To allow federal officer removal, the court must be able to identify a sufficient nexus between the federal officer or agency's direction and the action taken by a private party, and such nexus ordinarily requires that the federal officer had some degree of control over the action in question.  *See Mitchell*, 2:07-cv-00134, slip op. at 7 (noting the absence of the "type of direct and detailed control by a federal officer required to establish Federal Officer Removal"); *Orthopedic Specialists*, 518 F. Supp. 2d at 134-35.  The court cannot find a sufficient nexus between BCBSA's alleged tortious interference by informing ABBM of potential fraud, and the broad mandate by OPM under FEHBA to create a system that helps detect and prevent fraud and report on its success.  The court does not agree that the contract with OPM provides BCBSA with federal officer removal, such that internal regulation and compliance suffices to supply federal officer status.  Such removal based on broad language with little causal connection betrays the rationale for federal officer removal outlined above.[11]  Where, as here, BCBSA is a

---

[11]As one court put it:

> Under Defendant's theory that federal jurisdiction arises merely from being a provider of Medicare benefits without any direct causal connection to the decision that gives rise to Plaintiff's claim, all cases brought against intermediaries who have a contract to provide such benefits would be entitled to federal jurisdiction.  This conclusion is counter to the discussion above.

*Kennedy*, 329 F. Supp. 2d at 1318.

private party whose action is in line with its own economic incentive to monitor its policies, the justification for federal officer removal is less evident.

Moreover, as Judge Proctor noted in *Mitchell*, broad regulatory provisions instructing general compliance or internal monitoring are insufficient to show the close nexus between the defendant's action and the required federal direction. *Mitchell*, 2:07-cv-00134, slip op. at 7; *see also Watson*, 551 U.S. at 156.  It appears to this court that OPM's contract with BCBSA ensures compliance with FEHBA's directive to avoid fraudulent billing.  Such is not a delegation of authority sufficient to give BCBSA federal officer-like removal status when it contacts other private parties who are not under the FEHBA contract to inform them of allegedly wrongful practices.[12]  To be sure, BCBSA's contact with ABBM may not violate any Alabama laws, but there is an insufficient nexus between OPM's broad direction to monitor for fraud, among other encouraged business practices, and the alleged tortious interference with Plaintiff's contract with ABBM.[13]  *See Van Horn*, 629 F. Supp. 2d at 914 (noting that the FEHBA contract

---

[12] Unlike in *Pani*, where the plaintiff challenged the reporting of a medical provider under Medicare to a governmental agency, Plaintiff's challenge here claims tortious interference by BCBSA with Plaintiff's private contract with ABBM.  The court's determination does not necessarily prevent BCBSA from invoking federal officer removal where a plaintiff challenges BCBSA's fraud reporting to OPM, as required under the contract.  Such facts are not before the court, however, in this case.

[13]Because the court finds an insufficient nexus, the court does not reach the second prong of § 1442(a)(1) analysis to determine whether BCBSA asserted a colorable federal defense.

provided the defendant with discretion in whether or not to pursue an allegedly tortious action and, therefore, that it did not support removal).

## IV. CONCLUSION

As above, the court notes that if it becomes apparent that Plaintiff does, in fact, proceed based upon an assignment of benefits from FEHBA insured patients, then much of the court's analysis here is inapplicable.  In that case, federal jurisdiction would be established and BCBSA's motion to dismiss for Plaintiff's failure to avail himself of the required administrative remedy has merit.  Alas, Plaintiff has made no mention of patient authorization nor has he shown any written assignment of benefits, and the court cannot assume such written consent exists or underlies his claim.  Additionally, the court finds that federal common law does not predominate Plaintiff's claims and that BCBSA cannot identify a sufficient nexus between the alleged tortious actions and its direction under FEHBA to support federal officer removal.  Accordingly, and for the reasons stated more fully above, the court **REMANDS** this action to the Circuit Court of Jefferson County, Alabama for lack of subject matter jurisdiction.

**DONE** this 17th day of March, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE